IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CORTEX MCP, INC., | § § § | |
| PLAINTIFF | § § | |
| v. | § § | CIVIL ACTION NO. 6:23-CV-00048-FB |
| VISA, INC. | § § § | |
| DEFENDANT | § | |

**DEFENDANT VISA INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# **TABLE OF CONTENTS**

                                                                                                  **Page**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

      A. Plaintiff's Allegations ........................................................................................... 2

      B. Visa's Relevant Witnesses and Documents Are Predominantly in the Northern District of California .............................................................................. 3

      C. Plaintiff Has No Connection to the Western District of Texas But Does Have Connections to California .............................................................................. 4

      D. Third Parties Have Connections to California or Other States, Not Texas ............ 5

III. LEGAL STANDARDS .................................................................................................... 7

IV. TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS APPROPRIATE .................................................................................................................. 8

      A. Cortex Could Have Filed This Case in The Northern District of California .......... 8

      B. The Private Interest Factors Strongly Favor Transfer ............................................ 8

            1. The Cost of Attendance for Willing Witnesses Heavily Favors Transfer .................................................................................................... 8
            2. Availability of Compulsory Process Strongly Favors Transfer ................ 10
            3. Relative Ease of Access to Sources of Proof Strongly Favors Transfer ....................................................................................................... 11
            4. There Are No Practical Problems with Transferring This Case ............... 12

      C. The Public Interest Factors Favor Transfer ........................................................... 13

            1. Local Interest Heavily Favors Transfer ..................................................... 13
            2. Relative Court Congestion Between the Northern District of California and This District Is Neutral ....................................................... 14
            3. The Remaining Two Public Interest Factors Are Neutral ........................ 14

V. CONCLUSION ................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA,
  2021 WL 2043978 (W.D. Tex. May 21, 2021) ..............................................................8, 9

*In re Amazon.com, Inc.*, No. 2022-157,
  2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) ...................................................................2

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) ...................................................................................10

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)........................................................................................13

*In re Apple Inc.*, No. 2021-181,
  2021 WL 5291804 (Fed. Cir. Nov. 15, 2021)............................................................12, 14

*In re DISH Network LLC*, No. 2021-182,
  2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)....................................................................10

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).................................................................................8, 9, 11

*In re Google LLC*, No. 2021-171,
  2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ....................................................................13

*In re Google LLC*, No. 2021-178,
  2021 WL 5292267 (Fed. Cir. Nov. 15, 2021)..................................................................12

*In re Google LLC*, No. 2021-170,
  2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ...................................................................8

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ..................................................................................12, 14

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009).........................................................................................7

*In re Pandora Media, LLC*, No. 2021-172,
  2021 WL 4772805 (Fed. Cir. Oct. 13, 2021).................................................................9, 10

*In re Volkswagen AG,*
  371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*")................................................................8

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ........................................................7, 12

*Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432-ADA,
  2020 WL 4905809 (W.D. Tex. Aug. 6, 2020)..............................................................8, 11

*Polaris Innovations Ltd. v. Dell*, *Inc.*, No. 16-451-XR,
 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ...................................................................13

*Super Interconnect Techs. v. Google LLC*, No. 6:21-CV-00259-ADA,
 2021 WL 6015465 (W.D. Tex. Nov. 5, 2021) ..............................................................8, 10

*WAG Acquisition LLC v. Amazon.com, Inc.*, No. W-21-CV-00815-ADA,
 2022 WL 9544373 (Oct. 14, 2022) ...................................................................................12

*XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA,
 2022 WL 3702271 (W.D. Tex. Aug. 26, 2022) ................................................................10

*XY, LLC v. Trans Ova Genetics, LLC*, No. 16-447-RP,
 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...................................................................13

## STATUTES

28 U.S.C. § 1400(b) ........................................................................................................................8

28 U.S.C. § 1404(a) ............................................................................................................ *passim*

Pursuant to 28 U.S.C. § 1404(a), Defendant Visa, Inc. ("Visa") respectfully requests that the Court transfer this action, filed by Plaintiff Cortex MCP, Inc. ("Cortex" or "Plaintiff"), in the United States District Court for the Western District of Texas, to the United States District Court for the Northern District of California.

## I.   INTRODUCTION

Cortex seeks to use the Western District of Texas to pursue allegations that Visa's technology infringes claims of four patents, despite the fact that the case has virtually no connection to this District.  Cortex is not located in this District; it is a Delaware corporation with its current principal place of business in Arizona.  Moreover, during the relevant time, Cortex was headquartered in California.  Plaintiff has no known presence or personnel within this District.  In addition, the named inventor of the Asserted Patents does not reside in this District, nor do the patent attorneys that prosecuted the Asserted Patents.  Consequently, there is no convenience to Plaintiff in litigating this case in this District, where it has no known presence, witnesses, or documents.

The Northern District of California is clearly a more convenient forum for this patent infringement action.  Visa is a Bay Area, California-based, company.  Key Visa employees who have developed and continue to work on the accused products are based in Northern California, and relevant Visa documents are created and maintained by the employees working on the products and services there.   Further, potential third-party witnesses, including those knowledgeable regarding prior art to the Asserted Patents, are predominantly based in California.

Litigating in the Western District of Texas, which has little to no connection to this case, would be substantially less convenient than in the Northern District of California, where relevant Visa employees and third-party witnesses are located, and relevant documents are created and

maintained. Moreover, the Northern District of California will be at least as convenient, if not more convenient, for Plaintiff since its headquarters at the relevant time were in California.

Transfer should be granted where, as here, "the sources of proof for the claims against [Defendant] are almost exclusively found in" the transferee venue. *In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *4 (Fed. Cir. Dec. 15, 2022). Accordingly, for the convenience of parties and witnesses, the Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404(a).

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Allegations

Cortex filed a patent infringement suit against Visa on January 26, 2023 in this District. Dkt. 1 ("Complaint" or "Compl."). The Complaint alleges infringement of U.S. Patent Nos. 9,251,531 (the "'531 Patent"), 9,954,854 (the "'854 Patent"), 10,749,859 (the "'859 Patent"), and 11,329,973 (the "'973 Patent") (collectively, the "Asserted Patents"). Compl. ¶ 2.

According to Cortex, the Asserted Patents are for "Officially Verifiable Electronic Representation" or "OVER File technology," which Cortex contends is a tokenization platform that "allows consumers to store credit card data, and associated personal identifying information, on a mobile device without the associated risk if this data is accessed by hackers." *Id.* ¶ 9.[1] Cortex accuses the Visa Token Service ("VTS" or the "accused product") of infringing Cortex's patents. *See id.* ¶¶ 16, 37, 60, 80.

Cortex further alleges that the claimed infringement is willful because of alleged communications occurring in 2013 and 2016-17. *Id.* ¶ 101. Specifically, Cortex asserts that in 2013, it met with representatives from CyberSource—a software company owned by Visa—to

---

[1] For the avoidance of doubt, Visa disputes Cortex's characterization of the Asserted Patents.

discuss a possible business relationship, and the parties entered into a non-disclosure agreement. *Id*. ¶ 10. Cortex also contends that in 2016, Cortex sent Visa information on its "OVER File technology" in response to a request from Visa "for a summary of potential 'synergies' between the two companies," and that in early 2017, Cortex sent similar information to Visa's Executive Vice President. *Id*. ¶ 11. There is no reference in the Complaint to where the alleged meeting with CyberSource occurred, who was involved in the alleged communications with Visa, or the location of the relevant Cortex office(s) and personnel when these alleged communications occurred.

### B. Visa's Relevant Witnesses and Documents Are Predominantly in the Northern District of California

Visa has been headquartered in the Northern District of California since its formation in 2007 and maintains three offices there in Foster City, Palo Alto, and San Francisco.[2] *See, e.g.*, Ex. 1;[3] Chitalia Decl. ¶ 3.[4] Visa's management and technology leadership are primarily located in these offices in the San Francisco Bay Area. Chitalia Decl. ¶ 3. The U.S. Visa employees with primary knowledge of the design, development, and implementation of Visa Token Service reside and work in the San Francisco Bay Area. *Id.* ¶ 6. The majority of the design work for Visa Token Service took place in the San Francisco Bay Area, and the thought leadership for the service was centered in the San Francisco Bay Area. *Id.* Marketing decisions for the Visa Token Service are directed from Visa's San Francisco Bay Area Offices. *Id*. ¶ 8. Only a single employee on the current Visa Token Service team works in Texas compared to the twenty-eight who work in the

---

[2] Visa's predecessors have a long-standing history in the San Francisco Bay Area.

[3] All citations to "Ex." herein refer to Exhibits to the Declaration of Lucy Yen, dated April 7, 2023.

[4] All citations to "Chitalia Decl." herein refer to the Declaration of Jalpesh Chitalia in Support of Visa Inc.'s Motion to Transfer Venue to the Northern District of California, dated April 5, 2023.

San Francisco Bay Area.  *Id.* ¶ 7.  This employee only joined Visa in 2019—well after the initial release of VTS and the alleged communications between Cortex and Visa or CyberSource.  *Id.*  Moreover, this employee works on only one piece of VTS, is relatively junior, and reports to and collaborates with more senior team members who are located in the Bay Area and have a broader view of the VTS product.  Based on his scope, he does not have knowledge unique from that of employees in the San Francisco Bay Area.  *See id.*

The documents and records relating to Visa Token Service are also most easily accessed from San Francisco Bay Area, California.  *Id.* ¶ 9.  As discussed above, employees working on VTS who have created such documents are primarily based in the San Francisco Bay Area.  Further, the secure servers where many such documents are maintained are managed from the San Francisco Bay Area.  *Id.* ¶ 9.  In addition, Visa's subsidiary, CyberSource, is also headquartered in the Northern District of California and has been since 2010.  *Id.* ¶ 4.

      **C.**      **Plaintiff Has No Connection to the Western District of Texas But Does Have Connections to California**

Cortex alleges that it is a Delaware company with its principal place of business located in Surprise, Arizona.  *See* Compl. ¶ 3.  While Cortex may currently be located in Arizona, when it was founded in 2012 (only one year before it allegedly communicated with Visa regarding the Asserted Patents), Cortex registered with the state of California and listed its "principal executive office" in Ladera Ranch, California.  *See* Ex. 2.  Shaunt Sarkissian, the sole named inventor of the Asserted Patents, was also listed as residing in Ladera Ranch, California.  *Id.*  California is further listed as Cortex's location on the asserted '531 patent.  *See* Compl. Ex. 1.  Indeed, in 2018, when Cortex was acquired by a third-party—Uphold, Inc.—public reports described Cortex as a "California Company" and a company that "serves customers in the State of

4

California." *See* Exs. 3, 4.  In contrast, Cortex appears to have no offices, personnel, or any other connections to Texas—let alone the Western District of Texas.[5]

### D. Third Parties Have Connections to California or Other States, Not Texas

None of the individuals associated with the Asserted Patents—including the named inventors, the inventors of prior art disclosed on the face of the patent, and the prosecuting attorneys—are associated with Texas.

The named inventor on all four patents is Shaunt M. Sarkissian, whose location is listed as California on the '531 Patent and other non-Texas states on the other three patents.  Compl. Exs. 1-4.[6]  Mr. Sarkissian appears to currently reside in Reno, Nevada, which is significantly closer to the Northern District of California than the Western District of Texas.  *See* Exs. 8, 9.  The attorneys that handled the applications for the Asserted Patents appear to have been based in Palo Alto, California and Pittsburgh, Pennsylvania:  The prosecuting attorney listed on the face of the '854 Patent was based in Palo Alto, *see* Ex. 10, and the prosecuting attorney listed on the face of the '973 Patent was based in Pittsburgh, *see* Ex 11.[7]  The prosecuting firm for all four Asserted Patents is K&L Gates LLP, which is headquartered in Pittsburgh.  *See* Ex. 12.  There is no indication anyone involved in the prosecution of the Asserted Patents was or is based in Texas.

---

[5] Cortex's public social media profiles, including LinkedIn and Twitter, also do not suggest that Cortex has any connection with Texas.  Instead, these profiles indicate that Cortex has a location in Cambridge, Massachusetts; though, Cortex does not appear to have any corporate filings in Massachusetts. *See* Exs. 5, 6. In addition to California, Massachusetts, and Arizona, Cortex's corporate filings indicate its headquarters were at one time in Reno, Nevada.  Ex. 7.

[6] Although Mr. Sarkissian was the founder and CEO of Cortex, he appears to no longer work at the company.  *See* Ex. 8.

[7] The other two Asserted Patents do not list a specific prosecuting attorney, but all of the patents were prosecuted by the same firm.

5

In addition, witnesses about relevant prior art likely reside in California; many in the Northern District of California specifically.[8] The Asserted Patents identify around 13 prior art patents and patent publications that were disclosed to the Patent and Trademark Office during the prosecution of the applications that lead to those patents ("Disclosed Patent Prior Art"). *See* Compl. Exs. 1-4. Out of approximately 35 unique inventors listed on the Disclosed Patent Prior Art references, 6 are located in California, including 5 in the Northern District of California. Ex. 13, at 2, 80, and 232; Ex. 14 at 9, 15, 16, 24, 28, and 30. California is by far the most represented state among the inventors on the Disclosed Patent Prior Art. The next most highly represented U.S. state is Massachusetts with 4 unique inventors listed. *See* Ex. 14, at 25, 32, and 35. None of the inventors of the Disclosed Patent Prior Art are listed as located in Texas. *See id.*

Visa has identified additional, relevant, prior art that was not disclosed during prosecution of the Asserted Patents.[9] Given Visa's history of innovation in the digital payment security space and Cortex's apparent reading of the Asserted Patents, much of this art is connected to Visa and the Northern District of California. For example, U.S. Patent No. 10,380,585, titled "Local Usage of Electronic Tokens in A Transaction Processing System," claims priority to a U.S. provisional patent application filed June 2, 2011, originally issued to Visa International Service Association in San Francisco, California, and lists two Bay Area employees as inventors. Ex. 15. U.S. Patent No. 9,280,765, titled "Multiple Tokenization for Authentication," was also assigned to Visa International Service Association, claims priority to an April 11, 2011, U.S. provisional patent

---

[8] Prior art are references or documents that can be used to show that the claimed invention of a patent was not novel or was obvious at the time it was allegedly invented.
[9] Visa's invalidity contentions are not yet due, and Visa reserves the right to advance other prior art references and invalidity theories when such contentions are due.

6

application, and lists an inventor in Pleasanton, California in the Northern District of California. Ex. 16.

Further, Cortex alleges in the Complaint that the accused products "implement[] processes taught by EMVCo, a global technology body … [that] has adopted an EMV Payment Tokenization Specification Technical Framework to provide guidelines for tokenized transactions that are followed by EMVCo members such as Visa." Compl. ¶ 16. The Complaint also cites EMVCo sources numerous times to describe the process of tokenized transactions. *See id.* n.5, 6, 10-12, 15-18, 21-22, 25, 27, 30, 32, 34-35. EMVCo is located in Mountain View, California—in the Northern District of California. Ex. 17.

### III. LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer" a civil action to any district "where it might have been brought[.]" 28 U.S.C. § 1404(a). To evaluate transfer under 28 U.S.C. § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If so, the Fifth Circuit also considers "private" and "public" factors to determine whether transfer is appropriate, where the private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive"; and the public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* at 315 (citations omitted). Plaintiff's choice of venue is not a factor in the transfer analysis. *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

## IV.  TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS APPROPRIATE

### A.  Cortex Could Have Filed This Case in The Northern District of California

As an initial matter, Plaintiff could have brought its case in the Northern District of California because Visa's headquarters and principal place of business are there.  *See* 28 U.S.C. § 1400(b).  This case should be transferred there because it is clearly the more convenient forum, as discussed below.

### B.  The Private Interest Factors Strongly Favor Transfer

#### 1.  The Cost of Attendance for Willing Witnesses Heavily Favors Transfer

As courts in this District have repeatedly stated, the "convenience of witnesses is the ***single most important factor*** in the transfer analysis." *Super Interconnect Techs. v. Google LLC*, No. 6:21-CV-00259-ADA, 2021 WL 6015465, at *3 (W.D. Tex. Nov. 5, 2021) (emphasis added); *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 6, 2020); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  The Federal Circuit has explained that the inquiry for this factor "should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) (applying Fifth Circuit law).  Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*").  However, witnesses that reside distant from both forums "will be inconvenienced by extensive travel regardless of the forum and thus 'the 100-mile rule should not be rigidly applied.'" *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-

8

00810-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) (quoting *In re Genentech*, 566 F.3d at 1344)).

Here, Visa witnesses are located primarily in the Northern District of California. They include employees knowledgeable about the development and operation of the accused products. Chitalia Decl. ¶ 6. By contrast, only one member of the team responsible for the design, development, and implementation of VTS is located in Texas. *Id.* ¶ 7. The Northern District of California is clearly the more convenient forum for Visa's witnesses as they reside there; trial in that District would require the least amount of travel and time away from home and work for all or virtually all of Visa's witnesses.

The Northern District of California appears to be at least equally convenient for Cortex's witnesses as well. Cortex has not identified any relevant witnesses in the Western District of Texas, nor does it appear to have any Texas-based personnel based on public information. Cortex states it is currently headquartered in Surprise, Arizona. Surprise is roughly 1,000 miles by car to San Antonio, TX, and non-stop flights between the two cities are roughly two hours. Ex. 18. Surprise is similarly about 750 miles by car to San Francisco, California, for example, and non-stop flights are also approximately two hours. Ex. 19. Any employees Cortex still has in its former headquarters in California or Reno, Nevada would find the Northern District of California more convenient to travel to than this District, whereas any employees in Cambridge, Massachusetts "will be inconvenienced by extensive travel regardless of the forum" and are therefore neutral in the analysis of this factor. *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) (quoting *In re Genentech*, 566 F.3d at 1344)).

This "litigation should be conducted where more witnesses could testify without leaving their homes or their regular places of business." *In re Pandora Media, LLC*, No. 2021-172, 2021

WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). This factor weighs strongly in favor of transfer.

### 2. Availability of Compulsory Process Strongly Favors Transfer

Because far more potential third-party witnesses are located in the Northern District of California than this District, the compulsory process factor supports transfer. "This factor 'weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.'" *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *5 (W.D. Tex. Aug. 26, 2022) (quoting *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)). "Because [third-party witnesses] are based in California, the [Northern District of California] transferee court can compel their testimony at trial—this Court cannot." *Id.* at *6. "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *Super Interconnect Techs.*, 2021 WL 6015465, at *4 (quoting *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021)).

Numerous potential third-party witnesses would be subject to subpoena in the Northern District of California, but not in this District. For example, EMVCo, which provides instructions and standards for tokenization and is referenced by Cortex in its allegations against Visa's accused products, is located in the Northern District of California. *See* Ex. 17. In addition, California is the most represented state among the inventors listed on the patent and patent application prior art disclosed on the face of the Asserted Patents, as discussed above. *See* Exs. 13, 14. Further, no prior-art inventors are disclosed as Texas inventors. *See id.* The inventors of the additional prior art Visa has identified also appear to still reside in the Northern District of California. *See, e.g.*, Exs. 20, 21, 22. Moreover, at least one prosecuting attorney appears to have been at K&L Gates LLP's Palo Alto, California office at the time of the patent prosecution. *See supra* at § II.D.

10

In addition, the parties' former personnel knowledgeable about the alleged events underlying Cortex's claims are more likely to be subject to subpoena power in the Northern District of California than in this District. For example, Cortex refers to a non-disclosure agreement ("NDA") with CyberSource pursuant to which Cortex allegedly discussed the subject matter of the Asserted Patents with CyberSource. *See* Compl. ¶ 10. The former CyberSource executive who signed the NDA appears to be based in San Mateo, California in the Northern District of California. Chitalia Decl. ¶ 10; Ex. 23. Cortex's Vice President of Business Development at the time of the meeting is still based in California and may be knowledgeable regarding Cortex's attempts to develop business with Visa. Ex. 24. Similarly, an advisor to Cortex at the time is still based in San Francisco, California. Ex. 25. Both CyberSource and Cortex were headquartered in California at the time the alleged meeting took place, so former personnel knowledgeable about the meeting are generally more likely to be subject to the subpoena power of the Northern District of California than this District.

By contrast, other potentially-relevant third-party witnesses are not in this District or in Texas, and therefore are not subject to compulsory process in this forum. The founder and former CEO of Cortex and named inventor of the Asserted Patents appears to be based in Nevada. *See* Exs. 8, 9. The other prosecuting attorney listed for the Asserted Patents is based in Pittsburg, Pennsylvania. Ex. 11. The availability of compulsory process weighs strongly in favor of transfer.

### 3. Relative Ease of Access to Sources of Proof Strongly Favors Transfer

The documents and records relating to Visa Token Service are most easily accessible in the Northern District of California and are maintained there. Chitalia Decl. ¶ 9. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs favor of transfer to that location." *Parus Holdings*, 2020 WL 4905809, at *3 (citing *In re Genentech*, 566 F.3d at 1345).

"[T]he location of document custodians and location where documents are created and maintained, [] may bear on the ease of retrieval." *In re Google LLC*, No. 2121-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Transfer is warranted here because "essentially all of [Defendants'] source code and documentary evidence relevant to this action are maintained in the Northern District of California." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021); *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (relevant "evidentiary records maintained at [Defendant's Northern District of California] headquarters" weigh in favor of transfer).

In contrast, Cortex has no known ties to the Western District of Texas. It is a Delaware corporation based in Arizona, and formerly based in California and other non-Texas states; thus, any sources of proof Cortex may offer are potentially in California, and if not, are likely located outside of Texas—no more easily accessible in the Western District of Texas than in the Northern District of California. *See*, *e.g.*, *WAG Acquisition LLC v. Amazon.com, Inc.*, No. W-21-CV-00815-ADA, 2022 WL 9544373, at *4 (Oct. 14, 2022) (because plaintiff's evidence "located in New Jersey and Pennsylvania is no more easily accessed in the WDTX than" the transferee venue, the location of plaintiff's evidence "does not impact the determination" of the sources of proof factor). Thus, this factor favors transfer.

### 4. There Are No Practical Problems with Transferring This Case

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor is neutral, as there are no practical considerations that would make trial in this District more convenient than in the Northern District of California. For example, there have not been other cases involving the Asserted Patents in the Western District of Texas, and this case is in its infancy. There is no practical benefit to keeping the case in this District.

12

### C. The Public Interest Factors Favor Transfer

#### 1. Local Interest Heavily Favors Transfer

The local interests of the Northern District of California are strongly implicated in this case whereas the local interests of the Western District of Texas are comparatively small. A forum's local interests in deciding local disputes favors transfer. The local interest factor evaluates "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (citation omitted); *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 06, 2021). Moreover, "headquarters in a certain location gives a strong local interest." *Polaris Innovations Ltd. v. Dell*, *Inc.*, No. 16-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016); *XY, LLC v. Trans Ova Genetics, LLC*, No. 16-447-RP, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) (holding that the "district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case").

Here, Visa is headquartered in the Northern District of California, and the "events that form the basis for [Plaintiff's] infringement claims against [Visa] occurred in the Northern District of California where [Visa] developed the accused [product]." *In re Google LLC*, 2021 WL 4592280, at *5. As discussed above, the U.S. Visa employees and former employees who have worked on the accused products are primarily based in the Northern District of California (and none are based in the Western District of Texas). In addition, many of the witnesses with knowledge of the prior art are based in the Northern District of California or the state of California. The Northern District of California has an interest in adjudicating disputes regarding prior art from its inventors.

In contrast, the Western District of Texas has no specific connection to the events giving rise to this suit. Whereas Visa has wide-ranging and long-standing connections to the Northern

13

District of California that are directly relevant to this suit, Plaintiff has no apparent connections to this forum. This factor strongly supports transfer.

### 2. Relative Court Congestion Between the Northern District of California and This District Is Neutral

The Federal Circuit has noted that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021). The most recent published judicial caseload statistics bear this out. For the latest period reported, the Northern District of California had 890 pending cases and 699 weighted filings per judgeship with an average time-to-trial of 34.7 months, and the Western District of Texas had 841 pending cases and 845 weighted filings per judgeship with an average time to trial of 28.3 months. *See* Ex. 26 at 1-2. This factor is neutral.

### 3. The Remaining Two Public Interest Factors Are Neutral

Because both forums are familiar with patent law and there is no prospect for any conflict of laws, the final two factors—familiarity with the law and avoidance of problems of conflicts of law or application of foreign law—are neutral.

## V. CONCLUSION

The "center of gravity of the action [is] clearly in the transferee district[], not the Western District of Texas." *In re Juniper Networks, Inc.*, at 1323. Because each of the public and private factors favor transfer or are neutral, the Court should transfer this case to the Northern District of California—a more convenient forum—under 28 U.S.C. § 1404(a).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  April 7, 2023 |  |
|  | By: /s/ *Lucy Yen* |

        Leslie Sara Hyman
        Texas State Bar No. 00798274
        lhyman@pulmanlaw.com
        **PULMAN, CAPPUCCIO & PULLNE, LLP**
        2161 N.W. Military Highway,
        Suite 400301
        San Antonio, TX  78213
        Tel: (210) 222-9494
        Fax: (210) 892-1610

        James C. Yoon
        jyoon@wsgr.com
        WILSON SONSINI GOODRICH & ROSATI
        650 Page Mill Road
        Palo Alto, CA 94304
        Tel: (650) 493-9300
        Fax: (650) 565-5100

        Lucy Yen (*pro hac vice*)
        lyen@wsgr.com
        WILSON SONSINI GOODRICH & ROSATI
        1301 Avenue of the Americas
        40th Floor
        New York, NY 10019
        Tel: (212) 999-5800
        Fax: (866) 974-7329

        Catherine Lacey (*pro hac vice*)
        clacey@wsgr.com
        WILSON SONSINI GOODRICH & ROSATI
        One Market Plaza, Spear Tower
        Suite 3300
        San Francisco, CA 94105
        Tel: (415) 947-2000

        **ATTORNEYS FOR DEFENDANT VISA, INC.**

## CERVICE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing documents were served on all counsel of record via CM/ECF electronic mail on April 7, 2023.

Dated:  April 7, 2023

By: /s/ *Lucy Yen*
Lucy Yen (*pro hac vice*)
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI