**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **CORTEX MCP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. WA-23-CV-0048-FB** |
| | ) | |
| **VISA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA AND
FURTHER ORDERS OF THE COURT**

Before the Court are (1) Defendant Visa Inc.'s Motion to Transfer Venue to the Northern

District of California (docket no. 22), (2) Plaintiff's response (docket nos. 50) in opposition thereto, and

(3) Defendant's reply (docket no. 51) to Plaintiff's response. Also pending are (1) Defendant Visa

Inc.'s Motion to Dismiss Plaintiff's Claims for Indirect Infringement and Pre-Suit Willful Infringement

in Plaintiff's First Amended Complaint (docket no. 29) under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, (2) Plaintiff's response (docket no. 30) to Defendant's motion to dismiss, and (3)

Defendant's reply (docket no. 31) to Plaintiff's response.

After careful consideration, the Court is of the opinion that the motion to transfer venue should

be granted. Because a court may decide to proceed with determining venue before reaching the merits

of a case, *GHJ Holdings, Inc. v. Suncast Corp.*, No. 5:11-CV-22, 2011 WL 13223646, at *2 (E.D. Tex.

July 11, 2011), it is not necessary for this Court to rule on the 12(b)(6) motion. Accordingly, the Court

is further of the opinion that the Rule 12(b)(6) motion should be denied without prejudice as moot,

subject to Defendant refiling a renewed motion to dismiss within thirty days of the acknowledgment

of receipt of this action by the Northern District of California, unless that court orders otherwise.

Background

Plaintiff Cortex MCP, Inc. ("Cortex"), which is headquartered in Surprise, Arizona, and also has operations in Reno, Nevada, filed this patent infringement suit against Defendant Visa, Inc. ("Visa") in the Western District of Texas in January, amending its complaint in April.  Cortex alleges Visa has infringed four of its patents–Patent No. 9,251,531; Patent No. 9,954,854; Patent No. 10, 749,859; and Patent No. 11,329,973–and its officially verifiable electronic representation or OVER encrypted token technology.  The technology, according to Cortex, allows people to store credit card data and other personal information on mobile devices for merchants to use with existing point-of-sale technology, safeguarding the information from hackers.  Cortex alleges the Visa Token Service ("VTS") infringes on Cortex's patents.

Visa, which is headquartered in the San Francisco Bay Area and also has operations in Austin, Texas, moves to transfer this case to the Northern District of California.  Visa contends that is where relevant witnesses and documents are primarily located, and points out that Cortex's only disclosed witness, named as CEO and inventor of the Asserted Patents, lives in Reno, Nevada–a three-and-one-half hour drive from the Northern District of California.  Visa also notes that Cortex has no connection to Texas and it was previously headquartered in the Northern District of California.

Cortex responds that Visa's presence in Austin supports  venue in the Western District of Texas and mitigates any possible inconvenience for Visa witnesses who may need to travel from California or beyond.  Cortex also argues that keeping the case in Texas would reduce costs based on the federal government's per diem rate and speed the case's resolution because the time to trial is 730 days in this District as compared to 831 days in the Northern District of California.

Legal Standard

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id.*

Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).  The party seeking to transfer venue for convenience bears the burden of proof. *In re Volkswagen*, 545 F.3d at 314. The burden is not merely that the alternative venue is more convenient, it must be clearly more convenient. *Id*. at 314–15. Although "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). However, the Federal Circuit has clarified that for courts to hold a factor favors transfer, the movant need not show an individual factor clearly favors transfer. *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020).

<u>Arguments of the Parties</u>

Visa seeks to transfer this patent infringement suit to the Northern District of California, while Cortex argues that Visa's Austin operation supports venue in the Western District of Texas.  The crux of Cortex's argument is that it learned through publicly available information that Visa's Austin operations "provide engineering, technical and sales support, and data center operation for the Visa Token Service, with its director of operations and infrastructure for token services also based in Austin." (Docket no. 50 at page 5).  Cortex states it "has managed to uncover that there are many Visa employees located in Texas who are both knowledgeable about, and involved in, the alleged infringement of Cortex's patents." (*Id.*)  "There are likely many more because tokenization is a core component of Visa's business," Cortex adds, asserting that "the information shows Visa's premise for transferring  this suit out of [the Western District of Texas] is  false." (*Id.*)  Indeed, Cortex concludes,

"work on the Accused Products necessarily implicates the approximately 2,488 Visa employees that are based in Austin." (*Id.* at 5-6).

Analysis

As previously noted, this Court has considerable or broad discretion in deciding this motion, and the first step in that determination, whether the judicial district to which transfer is sought is a district in which the claim could have been filed originally, is satisfied here. *In re Volkswagen AG,* 371 F.3d 201, 203 (5 Cir. 2004); *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1999). Cortex could have brought this suit in the Northern District of California because Visa's headquarters and principal place of business is in the San Francisco Bay Area.  28 U.S.C. § 1400(b).

Next, the Court must determine whether a transfer is proper in light of § 1404(a) which allows transfer for "the convenience of parties and witnesses" and "in the interest of justice." *In re Volkswagen AG*, 371 F.3d at 203. The "convenience" determination as set forth above is made by analyzing a "number of private and public interest factors, none of which are given dispositive weight." *Id*.

A.    Private Interest Factors

1.    The Cost of Attendance of Witnesses and Convenience of Witnesses

The convenience of witnesses is "probably the single most important factor in [the] transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). In analyzing this factor, courts must consider the convenience of the possible party and non-party witnesses. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). The distance between the current venue and the proposed venue is also considered:

> According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred.

*Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

*Dodots Licensing Sol. LLC v. Apple Inc.*, W-22-CV-00533-ADA, 2023 WL 4980561, at *3 (Aug. 3, 2023). For the reasons set forth below, this litigation should be conducted in the Northern District of California, where the majority of witnesses with relevant knowledge could testify without leaving their homes or regular place of business. *See Volkswagen*, 545 F.3d at 317; *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021).

Visa is headquartered and most of its employees and management are located in the Northern District of California. Of the approximately 220 Visa employees working on VTS, 215 are in the San Francisco Bay Area and 5 are in Austin. Cortex does not dispute that these employees lack unique knowledge about VTS and have team members with similar roles located in California or that they report to leadership in California.

Instead, Cortex argues "work on the Accused Products necessarily implicates the approximately 2,488 Visa employees that are based in Austin," each of whom Cortex suggests "is a potential witness to this Action." (Docket no. 50 at pages 1-2). This Court rejected the argument that the scope of this case should be expanded beyond VTS in an order denying Cortex's motion to compel venue discovery,

(Docket no. 47).  The distinction from Cortex's prior argument is that Cortex no longer relies on  the three products at issue in the motion to compel.  Instead, Cortex now contends the relevant Visa employees are those working on VisaNet – a broad universe encompassing almost all Visa platforms–on which Cortex never sought discovery and which was never addressed in Cortex's motion to compel. (*Compare* Docket no. 47 at page 3) (Cortex moved to compel venue discovery on Visa Click to Pay, Visa Acceptance Solutions and Visa Tap to Phone) *with* (Docket no. 50 at pages 8-10) (Cortex's opposition to venue transfer describing VisaNet employees as potential witnesses relevant to transfer analysis). The Court has reviewed Cortex's argument related to Texas connections through the belated reference to another product never previously addressed, and declines to find that work on the accused technology–which is VTS–implicates the approximately 2,488 Visa employees in Austin or  that each Austin employee is a potential witness in this case.

Cortex identifies nine additional Visa employees who Cortex contends are based in Austin and work on VTS.  These individuals do not outweigh the hundreds of employees identified across Visa's discovery responses and internal organizational charts who work in the San Francisco Bay Area with roles relating to VTS.  *See* (Docket no. 49-3 & docket no. 50 at Ex. 11).

 Moreover, the nine additional Visa employees that Cortex identifies are from a public source, LinkedIn profiles.  Although these Visa employees reference Visa Token Services or VTS, their LinkedIn profiles do not show that they are supervisory employees with unique knowledge of VTS. Instead, these individuals appear to have roles that are, at most, tangential to the design and implementation of VTS.

One employee indicates he works in Operations and Infrastructure, which are global functions that expand beyond VTS.  (Docket no. 51 at Ex. 28 (Chitalia Dep. Tr.) at 10:3-22, 73:11-21).  Three

employees indicate they work on software components from "across the company" that are not specific to VTS.  (Docket no. 51 at Ex. 28 (Chitalia Dep. Tr.) at 35:6-36:5; 38:14-39:22).  Another three indicate they are technical support staff and systems analysts who provide general support not specific to VTS.  (Docket no. 51 at Ex. 28 (Chitalia Dep. Tr.) at 46:7-47:10).  One employee indicates his work on VTS ended more than seven years ago, and he was based in California at the time.  (Docket no. 48-10; Docket no. 50 at Ex. 9 at 4).  And, although the final employee references Visa Token Service on her LinkedIn profile, Visa contends she does no work on VTS.  (Docket no. 51 at Ex. 28 (Chitalia Dep. Tr.) at 38:14-39:22).

Importantly, in the order denying Cortex venue discovery, the Court previously noted that Cortex's "emphasis on products that implement VTS is misplaced given that the amended complaint emphasizes one of the benefits of its tokenization invention is that it 'is compatible with any device and can be used without disrupting the merchant's existing point of sale infrastructure,' . . . mak[ing] clear that both the purported invention and the accused technology operate independently of 'devices' they are incorporated into[.]"  (Docket no. 47) (citations to amended complaint omitted).  Given that one of the alleged hallmarks of the patented technology is its independence from the underlying payment platforms, Visa's internal operations and infrastructure teams, technical support staff, and data software modelers, who work across Visa products, are unlikely to be witnesses in this case about alleged patent infringement by VTS.

Additionally, Cortex does not have any offices, employees, or other presence in the State of Texas or the Western District.  As noted, Cortex is headquartered in Surprise, Arizona and operates from there and Reno, Nevada.  This favors transfer because both Surprise and Reno are much closer to the Northern District of California than the Western District of Texas.

For example, Cortex's only identified witness is Shaunt Sarkissian, Cortex's CEO and the inventor of all four of the Asserted Patents. Mr. Sarkissian lives in Reno, Nevada. His monetary costs, as well as costs associated with being away from work, family and community, would be minimized by a transfer to the Northern District of California. *Volkswagen*, 545 F.3d at 317; *In re Pandora Media, LLC*, 2021 WL 4772805, at \*6.

Noting that Cortex was headquartered in California until recently, Visa asserts that transfer will also be more convenient for all former employees and third-party witnesses who reside in or near the Northern District of California. Although it is not clear whether any former employees or third-party witnesses would be willing or unwilling to attend a trial in this case, the Court agrees with Visa that they are more likely to be willing to attend a trial closer to their home because it will require less travel and costs. For all these reasons, the Court finds that this factor weighs in favor of transfer.

### 2.    Relative Ease of Access to Sources of Proof

With respect to sources of proof, the Court considers the relative ease of access to documentary evidence, such as where documents, records and physical evidence is stored. *Fintiv Inc. v. Apple Inc.*, Civil Action No. 6:18-cv-00372-ADA, 2019 WL 4743678, at \*2 (W.D. Tex. Sept. 10, 2019); *Coleman v. Trican Well Serv., L.P.*, 89 F. Supp. 3d 878, 881 (W.D. Tex. 2015). "[T]he question is relative ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345); *see XY, LLC v. Trans Ova Genetics, LC*, Case No. W-16-CA-0447-RP, 2017 WL 5505340, at #13 (W.D. Tex.

Apr. 5, 2017) ("In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity.  In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested.  The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.") (internal quotation omitted).

With regard to hard copies of documents related to the accused technology, Visa contends any available copies are located in the Northern District of California where the key employees who work on VTS are located.  As for documents which are electronically available, Visa contends that employees who are highly knowledgeable about VTS will be the ones needing to search for and identify the relevant documents for production.  VISA maintains that these employees are located in the Northern District of California.

In contrast, Visa asserts it has no potential sources of proof in the Western District of Texas or even in the State of Texas.  Visa contends none of its Texas employees who work on VTS can provide relevant testimony; the technical documents are not stored there or more easily accessible from there; and the sales, marketing and accounting documents are not located there. Because the evidence related to VTS is primarily located in the Northern District of California and VTS was primarily developed there, Visa maintains this factor weighs in favor of transfer.

In response, Cortex contends it has transferred its documents to "the offices of outside counsel" and that the law firm is based in Houston.  As an initial matter, "[t]he location of counsel, even those in possession of relevant documents, is not a factor to consider in a transfer-of-venue analysis." *City of Clinton v. Pilgrim's Pride Corp.*, No. CIV. 4:09-CV-386-Y, 2009 WL 4884430, at *7 (N.D. Tex. Dec. 17, 2009) (citing *In re Horseshoe Entm't*,  337 F.3d 429, 434 (5th Cir. 2003)).

-10-

Moreover, Cortex does not actually identify where its documents are located or the relative volume of hard copy versus electronic documents.  If Cortex means to argue that it transferred its documents to the Houston office of its attorneys, Houston is located in the Southern District of Texas.

In contrast, Visa identifies sources of proof that are more easily accessed in the Northern District of California.  Specifically, Visa identifies that the individuals who create and maintain the Visa documents most likely to be relevant in this case are located in the Northern District of California.

Although Visa acknowledges the majority of these documents are electronic and likely can be accessed from anywhere, Visa has also described certain instances where documents may be exclusively accessible in the Northern District of California.  Cortex, on the other hand, does not identify any potential documents that it contends are exclusively in Texas.

In considering this factor, it appears that all sources of proof are located outside of the Western District of Texas.  Although there is insufficient information as to the volume of hard copy records, it is evident that, given the nature of this case and the information in Visa's motion, the electronic volume will be tremendous.  In a recent decision, United States District Judge Alan D. Albright acknowledged that there may be a shift in the analysis of this factor based on the recent Fifth Circuit decision in *In re Planned Parenthood*, 52 F.4th 625, 630 (5th Cir. 2022).  In *Dodots Licensing Solutions LLC v. Apple Inc.,* W-22-CV-00533-ADA, 2023 WL 4980561, at *7 (Aug. 3, 2023), Judge Albright explained:

> The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." [*In re Planned Parenthood*, 52 F.4th at 630].  But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums.  *In re Apple, Inc.*, No., 2022 WL 1196768 at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers

the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC,* No. 2021-178, WL 5292267 at *2 (Fed. Cir. Nov. 15, 2021).

*See also Smart Mobile Techs., LLC v. Apple Inc.*, No. W-21-CV-00603-ADA, at *5 (W.D. Tex. Aug. 28, 2023) (explaining that location of document custodians should be considered when most documents are electronic).  Here, it is undisputed that no Cortex document custodians are located in Texas and that the majority of relevant Visa document custodians are located in California.  For all these reason, the relative ease of access to sources of proof weighs in favor of a transfer.

        3.      <u>Availability of Compulsory Process to Secure Attendance of Witnesses</u>

This factor, consideration of the availability for compulsory process to secure attendance of witnesses, applies only to non-party witnesses. *Coleman*, 89 F. Supp. 3d at 884. For purposes of evaluating this factor, "'current employees of a party' should be considered party witnesses because they can be presumed to appear willingly on behalf of their party employer.'" *Id.* (quoting *Vargas v. Seamar Divers. Intern., LLC.*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011)).

Under the Federal Rules of Civil Procedure, a court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii). "This factor weighs heavily in favor of transfer where more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genetech, Inc.*, 566 F.3d at 1345).

Cortex notes that relevant third parties, including a former Visa employee and EMVCo representatives, "are located far from California." (Docket no. 50 at page 6).  However, Visa points out

that these third parties are located in the United Kingdom, which is equally far from Texas.  Moreover, Visa observes that, although certain EMVCo representatives are located in the United Kingdom, EMVCo is based in the Northern District of California, which presumably would make California a more convenient venue for them.

Moreover, the Court agrees with Visa that relevant third-party witnesses associated with EMVCo, as well as potential documents created or maintained by EMVCo, are more likely in California than Texas.  Indeed, nothing suggests that any EMVCo witnesses or documents are in Texas.  Finally, the former employees of Visa, Cybersource and Cortex, who are alleged to have communicated regarding Cortex's purported tokenization technology in 2013, 2016, and 2017, are mostly located in California.  The Northern District of California would be able to subpoena these witnesses residing in its District and the surrounding area whereas Texas Western cannot.  For all these reasons, this factor weighs in favor of transfer.

    4.    <u>Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive</u>

This fourth factor weighs the relative costs of trial against transfer.  *See In re Volkswagen of Am.*, 545 F.3d at 315.  Cortex raises the issue of costs associated with litigating in each venue asserting, based on federal per diem rates, that costs would be half in Texas for lodging and sustenance.  One federal district court in Texas found that this weighed slightly against transfer.  *LightGuide, Inc. v. Amazon.com, Inc.*, No. 222CV00433RWSRSP, 2023 WL 6780180, at *7 (E.D. Tex. Sept. 13, 2023), report and recommendation adopted, No. 222CV00433RWSRSP, 2023 WL 6390026 (E.D. Tex. Sept. 29, 2023).

Here, however, the Northern District of California is where most (if not all) of Visa's witnesses live and work, and Cortex's headquarters and designated witness are located in Reno, Nevada, which

is much closer to the Northern District of California than the Western District of Texas.  Thus, travel of the witnesses to and from trial involves less distance if the trial occurs in the Northern District of California, and the number of witnesses having to arrange lodging and pay subsistence is less if the trial occurs in the Northern District of California.  Considering Cortex's per diem argument in light of the party witnesses identified by both parties, the Court finds that this factor weighs in favor of transfer.

B. Public Concerns

  1.   Local Interest in Having Localized Interests Decided at Home

As set forth by the court in *In re Apple, Inc.*, the local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple, Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (quoting *In re Acer*, 626 F3d. at 1256) (emphasis added)). There, the court found that because the accused products were designed, developed, and tested in the Northern District of California and because the lawsuit "calls into question the work and reputation of several individuals residing" in the Northern District of California, this factor weighed in favor of transfer. *Id*.

Cortex asserts that infringement occurs in Texas and that third parties in Texas distribute and accept Visa tokens.  However, this is true across the globe and cannot give rise to a particular interest in Texas over any other forum.  *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue.").

Moreover, Visa's office and employees in Austin do not favor transfer.  "Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020); *see also In re Acer Am.*

*Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).  Instead, local interest is established from "significant connections between a particular venue and the events that gave rise to a suit."  *In re Apple Inc.*, 979 F.3d at 1345.

The local interests of the Northern District of California are strongly implicated in this case, whereas the local interests of the Western District of Texas are comparatively small.  Visa is headquartered in the Northern District of California and the "events that form the basis for [Plaintiff's] infringement claims against [Visa] occurred in the Northern District of California where [Visa] developed the accused [product]."  *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).  As discussed above, the Visa employees who work on nearly every material aspect of VTS are primarily based in the Northern District of California and very few employees, and perhaps no likely witnesses, are based in the Western District of Texas.  Moreover, Visa points out that many of the witnesses with knowledge of the prior art are based in the Northern District of California or the State of California.  (Docket no. 22 at 10).  The Court agrees that the Northern District of California has an interest in adjudicating disputes regarding prior art from its inventors.

Finally, the Federal Circuit recently concluded that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).  Cortex does not currently engage in product competition in this marketplace.  And, "only the Northern District of California has significant connections to the events that gave rise to this suit."  *In re Apple*, No. 2021-181, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021).  Accordingly, this factor weighs in favor of transfer.

-15-

2.       The Remaining Factors are Neutral

With respect to the remaining factors: the administrative difficulties flowing from court congestion, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or the application of foreign law, the Court finds this recent analysis instructive:

> Considering the remaining factors, there do not appear to be any "practical considerations" favoring either venue because neither the WDTX nor the NDCA has any previous experience with the asserted patent or accused products and there are no related lawsuits pending in either district. As to court congestion, the Federal Circuit has repeatedly "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple Inc.*, 2021 WL 5291804, at *4 (quoting *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021)). Likewise, both the WDTX and the NDCA are familiar with relevant patent laws, and this case presents no material issues concerning conflict of laws or the application of foreign law. As a result, the remaining factors are neutral. *See Magic Cross Ranch, L.P. v. Manion*, No. 3:12-CV-00541-P, 2012 WL 13027449, at *3 (N.D. Tex. Sept. 25, 2012) ("The Court finds that the other public interest factors are neutral. Both [districts] are equally capable of applying the law that will govern the case. No issues exist which suggest any potential problems of conflict of laws or applying foreign law. Many courts are congested, and this factor is neutral.").

*USTA Tech., LLC v. Google LLC*, Case No. W-22-CA-01214-XR, 2023 WL48334891, at *6 (W.D. Tex. Jul. 26, 2023) (footnote omitted). Accordingly, the Court finds these factors to be neutral in this case.

Having considered the arguments and authorities presented by Visa in its motion and reply, as well as the arguments and authorities submitted by Cortex in response, the Court finds the private and public interest factors favor transfer to the Northern District of California or are neutral. Therefore, the Court finds that Visa has met its burden of showing the Northern District of California is a clearly more convenient forum.

-16-

IT IS THEREFORE ORDERED that Defendant Visa Inc.'s Motion to Transfer Venue to the Northern District of California (docket no. 22) is GRANTED such that this case is TRANSFERRED to the United States District Court for the Northern District of California Division.

IT IS FINALLY ORDERED that Defendant Visa Inc.'s Motion to Dismiss Plaintiff's Claims for Indirect Infringement and Pre-Suit Willful Infringement in Plaintiff's First Amended Complaint (docket no. 29) is DENIED without prejudice as moot.  Defendant may file a renewed motion to dismiss as to Rule 12(b)(6) within thirty days of the acknowledgment of receipt of this action by the Northern District of California, unless that court orders otherwise.

It is so ORDERED.

SIGNED this 3rd day of November, 2023.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE